IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

IN THE MATTER OF C. F. BEAN, LLC,
AS OWNER PRO HAC VICE AND
OPERATOR, AND BEAN MERIDIAN,
LLC, AS THE RECORD OWNER, OF
THE BARGE BEAN 20, OFFICIAL NO.
627225, PRAYING FOR EXONERATION
FROM OR LIMITATION OF LIABILITY          CIVIL NO. 1:13-cv-77-HSO-RHW

CONSOLIDATED WITH:

JERRIE P. BARHANOVICH,
EXECUTRIX AND PERSONAL
REPRESENTATIVE OF THE ESTATE
OF MARK BARHANOVICH, DECEASED                    PLAINTIFF

v.                                       CIVIL NO. 1:13-cv-84-HSO-RHW

C. F. BEAN, L.L.C. and ARCHER              DEFENDANTS / THIRD
WESTERN CONTRACTORS, L.L.C.                    PARTY PLAINTIFFS

v.

SUZUKI MOTOR CORPORATION,
SUZUKI MOTOR OF AMERICA, INC.
AND RSM INTERNATIONAL, INC.
D/B/A BOB's MACHINE SHOP               THIRD PARTY DEFENDANTS

MEMORANDUM OPINION AND ORDER GRANTING SUZUKI MOTOR
CORPORATION'S MOTION FOR SUMMARY JUDGMENT [329]; DENYING
AS MOOT SUZUKI MOTOR CORPORATION'S MOTIONS FOR PARTIAL
SUMMARY JUDGMENT [404] [406]; DENYING AS MOOT SUZUKI MOTOR
CORPORATION'S MOTION TO STRIKE [412] AND SUPPLEMENTAL
MOTION TO STRIKE [420]; AND DENYING AS MOOT C.F. BEAN, LLC,
AND BEAN MERIDIAN, LLC'S DAUBERT MOTION TO EXCLUDE
TESTIMONY OF SUZUKI MOTOR CORPORATION'S EXPERT DON F.
KUENY, P.E. [344]

BEFORE THE COURT are Suzuki Motor Corporation's Motion for Summary

Judgment [329], Suzuki Motor Corporation's Motions for Partial Summary

Judgment [404] [406], Suzuki Motor Corporation's Motion to Strike [412] and

Supplemental Motion to Strike [420], and C.F. Bean, LLC, and Bean Meridian,

LLC's, Daubert Motion to Exclude Testimony of Suzuki Motor Corporation's Expert

Don F. Kueny, P.E. [344].  These Motions are fully briefed.

Having considered the parties' submissions, the record, and all relevant legal

authorities, the Court is of the opinion that Suzuki Motor Corporation's Motion for

Summary Judgment [329] should be granted.  Suzuki Motor Corporation's Motions

for Partial Summary Judgment [404] [406], Suzuki Motor Corporation's Motion to

Strike [412] and Supplemental Motion to Strike [420], and C.F. Bean, LLC, and

Bean Meridian, LLC's, Daubert Motion to Exclude Testimony of Suzuki Motor

Corporation's Expert Don F. Kueny, P.E. [344], should be denied as moot.  Suzuki

Motor Corporation will be dismissed from this case with prejudice.

## I. BACKGROUND

A.    Factual Background

This case arises out of the death of Mark Barhanovich ("Barhanovich") on the

morning of September 16, 2012.  Mr. Barhanovich and one passenger, Mr.

Ransonet, were operating a 24' boat headed to a fishing reef known as "Katrina

Reef" in the Mississippi Sound.  Barhanovich[1] Answer, Defenses, and Claim [15] at

13.  The boat was powered by a single outboard motor.  *Id*.  Suzuki Motor

---

[1]  "Barhanovich" refers collectively to Jerrie P. Barhanovich, Individually and as
Executrix and Personal Representative of the Estate of Mark Barhanovich, and the
wrongful death beneficiaries of Mark Barhanovich, Deceased.

Corporation ("Suzuki") "designed in part and manufactured in part the subject 225 horsepower, 4 stroke outboard motor, Model DF225, bearing Serial No. 22501F-510312." Suzuki Ans. and Affirmative Defenses to Second Suppl. and Am. Third Party Compl. [203] at 3.

During the trip to the fishing reef, Mr. Barhanovich's boat and/or motor came into contact with an underwater obstacle. The motor came out of the water and entered the boat, striking Mr. Barhanovich and severely injuring him. Mr. Barhanovich was taken to a hospital in Ocean Springs, Mississippi, for treatment, but died later that day from his injuries. Barhanovich Answer [15] at 13. At the time of the incident, C.F. Bean L.L.C., as Owner Pro Hac Vice and Operator, and Bean Meridian L.L.C., as the Record Owner, of the Barge Bean 20, were engaged in dredging operations in the area pursuant to a sub-contract with Defendant Archer Western Contractors, LLC.

B.   Procedural History

1.   The Parties' Claims

On March 15, 2013, a Complaint for Exoneration from or Limitation of Liability [1] was filed in this Court styled "In the Matter of C.F. Bean L.L.C., as Owner Pro Hac Vice and Operator, Bean Meridian L.L.C., as the Record Owner, of the Barge Bean 20, Official No. 627225, Praying for Exoneration from or Limitation of Liability" ("Bean Complaint"). On March 20, 2013, Barhanovich filed a separate Complaint, Civil No. 1:13cv84-LG-JMR, naming as Defendants C.F. Bean, LLC

("Bean"), and Archer Western Contractors, LLC ("Archer Western").  On June 11, 2013, the Court consolidated both cases, upon agreement of the parties and the Court's finding that the case filed by Barhanovich for maritime negligence was predicated upon the same set of operative facts as those contained in the Bean Complaint [1].  Order [24] at 1-2.  The Court ordered that Civil No. 1:13cv84-LG-JMR be consolidated with this case for all purposes, with this case to serve as the lead case.  *Id*.  Archer Western filed its Claim [11] and Answer [13] to Bean's Complaint on May 3, 2013.  Barhanovich filed an Answer [15] to Bean's Complaint [1] and asserted a Counterclaim against Bean on May 6, 2013.

With leave of Court, Barhanovich filed her First Amended Claim and Complaint [57] against Bean and Archer Western on February 26, 2014.  The First Amended Claim and Complaint added Defendant David White, who was identified as an employee of Bean Dredging.  First Am. Claim and Compl. [57] at 4.  On May 19, 2014, Bean, Archer Western, and David White filed their Answer [71].

Fundamentally, Barhanovich asserted claims against contractor Archer Western, sub-contractor Bean, and Bean employee White, for violating federal law because they "negligently did not adequately monitor, mark, light, inspect, and warn of the dredge pipeline that was not readily visible to other vessels lawfully

navigating on the surface on September 16, 2012."[2]  First Am. Claim and Compl.
[57] at 9.  Barhanovich alleged that contact between Mr. Barhanovich's boat and the
dredge pipeline caused the "running and spinning propeller" to enter the boat and
strike Mr. Barhanovich, causing him severe injuries and his untimely death.  *Id.*

By Order [67] entered April 23, 2014, Bean and Archer Western were granted
leave to file a Third Party Complaint against Suzuki Motor Corporation, Suzuki
Motor of America, Inc., and Bob's Machine Shop, Inc.  Bean and Archer Western
filed the Third Party Complaint [69] on May 1, 2014.  By Order [156] entered
October 6, 2014, the Court granted Bean and Archer Western leave to file a Second
Supplemental and Amended Third Party Complaint [163], which was filed on
October 10, 2014.  In the Second Supplemental and Amended Third Party
Complaint [163], which is the operative pleading at this juncture of the proceedings,
Bean and Archer Western advance claims against Third Party Defendants Suzuki
Motor Corporation, Suzuki Motor of America, Inc., and RSM International, Inc., as
the successor-in-interest of Bob's Machine Shop, Inc.  ("RSM").

Specifically, Bean and Archer Western assert that they were not negligent,

---

[2]   In connection with this incident, C.F. Bean, LLC, subsequently entered a plea of
guilty on October 27, 2015, to one count of violating the Seaman's Manslaughter
Statute, 18 U.S.C. §1115, in the matter of *United States of America v. C.F. Bean LLC*,
Criminal No. 1:15cr71-HSO-RHW.  At the plea and sentencing hearing, Mr. James
Bean, on behalf of C.F. Bean, LLC, admitted that "Bean, through its agents and
employees, in failing to properly mark the dredge operation, proximately caused the
death of Mark Barhanovich, in violation of the federal law that is aimed at
criminalizing such conduct."  Transcript of Plea and Sentencing Hearing [442-1] at
33.

and that Mr. Barhanovich:

> . . . was operating his 24 foot pleasure boat, which was equipped with the aforesaid Suzuki motor and [RSM's] 'Flats Jac' jack plate, in the shallow waters of or near Biloxi Bay just off the east end of Deer Island in Harrison County, Mississippi, at an excessively high rate of speed when the lower unit or other portion of the Suzuki motor is believed to have struck the water bottom and/or some unknown submerged object, which caused the Suzuki motor's swivel bracket to fracture completely through at a location beyond its hinged connection with the motor's clamp bracket, which allowed the bulk of the motor to separate entirely from the rest of the boat and, impelled by the force of the underwater impact, to rotate upward and to be projected forward into the passenger compartment of the Barhanovich vessel, striking Mark Barhanovich and causing him to sustain traumatic and fatal injuries.

Second Suppl. and Am. Third Party Compl. [163] at 4.  Bean and Archer Western advance third-party claims for indemnification, predicated upon a theory of product liability, against Suzuki Motor Corporation, Suzuki Motor of America, Inc., and RSM.  *Id*. at 3-11.

On January 22, 2015, Suzuki Motor Corporation filed its Answer and Affirmative Defenses [203] to Bean's Second Supplemental and Amended Third Party Complaint [163] admitting that it "designed in part and manufactured in part the subject 225 horsepower, 4 stroke outboard motor, Model DF225, bearing Serial No. 22501F-510312."  Suzuki Ans. and Affirmative Defenses to Second Suppl. and Am. Third Party Compl. [203] at 1-10.  Bean and Archer Western's claims against Suzuki Motor of America, Inc., Order [237], and RSM, Order [268], have since been dismissed, leaving Suzuki Motor Corporation as the only Third Party Defendant.

On October 22, 2015, Barhanovich, Bean, Archer Western, and David White

filed an Unopposed Joint Motion [425] for Partial Dismissal with Prejudice, suggesting that all claims asserted by or on behalf of Barhanovich were amicably settled and compromised, and requesting that such claims be dismissed with prejudice, with the caveat that Bean, Archer Western, and their insurers retained the right to pursue their third-party claims for contribution, reimbursement, and recovery against Third Party Defendant Suzuki Motor Corporation.  Mot. [425] at 1-2.  On October 22, 2015, the Court entered its Order of Partial Dismissal [426], dismissing the Barhanovich claims with prejudice.

       2.    <u>Suzuki's Motion for Summary Judgment [329]</u>

The Second Supplemental and Amended Third Party Complaint [163], asserts that Suzuki was negligent in the "designing and/or manufacturing of the Suzuki Motor," that it failed to "adequately instruct and/or warn of hazards associated with the use" of the outboard motor, that the motor was "unreasonably dangerous to the user," and that the "materials were defective and/or insufficient to serve the purpose intended." Second Suppl. and Am. Third Party Compl. [163] at 8-9.  Bean and Archer Wester also assert a negligence claim.  *Id.*

On July 9, 2015, Suzuki filed its Motion for Summary Judgment [329]. Suzuki argues it should be dismissed because the expert disclosure deadline has passed and Bean's expert has failed to offer any formal opinion that there was a defect in either the design of, or the warnings provided with, the Suzuki motor. Mot. Summ. J. [329] at 1-2.

Suzuki asserts in its Memorandum in Support of Summary Judgment Motion [330] that Bean and Archer Western appear to assert claims that arise under "maritime products liability, couched in terms of strict liability in tort, negligence under the Restatement (Second) of Torts §402A, and the Mississippi Products Liability Act, §11-1-63, Mississippi Code Annotated."  Suzuki Mem. in Supp. [330] at 5.  Suzuki contends that general maritime law incorporates state law, as follows:

> "Strict products liability is part of the general maritime law." *Vickers v. Chiles Drilling Co.*, 822 F.2d 535, 538 (5th Cir. 1987). General maritime law provides a cause of action for product liability, brought either under a theory of negligence or strict liability. *East River Steamship Corp. v. TransAmerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), at 865-66 (gathering cases). Because general maritime law is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules[,]" courts consult state law and the Restatement (Second) of Torts for the applicable substantive law of products liability. *Vickers, supra*, quoting *E. River S.S. Corp, supra*, 476 U.S. at 865. The Supreme Court and the Fifth Circuit apply § 402(A) of the Restatement (Second) of Torts to maritime products liability cases. *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 879–80 (1997); *Vickers*, 822 F.2d at 538; *see* Shoenbaum, Admiralty and Maritime Law § 5-7 (5th ed. 2012) ("The applicable substantive law of products liability in admiralty is Section 402A of the Restatement (Second) of Torts[.]").

*Id.* at 5-6.  Suzuki next cites to the Mississippi Products Liability Act of 1993, Miss. Code Ann. §11-61-63 (MPLA), and posits that the legislature's enactment of the MPLA supercedes state law's reliance on the Restatement (Second) of Torts §402A. Suzuki references a number of cases interpreting the MPLA in support of this theory.  *Id.* at 6-8.

In response, Bean filed its Memorandum in Opposition [361], and attached a

collective Exhibit A [360-1] consisting of its expert Edward Fritsch's Affidavit dated July 18, 2015, and Fritsch's "Supplemental" Report dated July 15, 2015. Bean maintains that Fritsch's Affidavit, Supplemental Report, and deposition testimony provide the expert opinions that support Bean's claims against Suzuki, such that Suzuki's Motion must be denied on grounds that issues of material fact remain for resolution by the trier of fact at the non-jury trial of this matter. Mem. in Opp'n [361] at 4-8.

Bean also contends that its claims against Suzuki are strictly maritime claims that should be "governed by Section 402A of the Restatement (Second) of Torts as the proper substantive law in admiralty." Bean's Mem. in Opp'n [361] at 9. Bean argues that the MPLA "has additional legal elements that don't exist in [t]he Restatement (Second) of Torts." *Id.* at 11. Bean asserts that, to prove its product liability claim against Suzuki under Section 402A of The Restatement (Second) of Torts:

> Bean is required to essentially prove three elements:
>
> (1)   That the defendant sold or manufactured the product - SMC [Suzuki] doesn't contest that it is both the manufacturer and seller;
> (2)   That the product was unreasonably dangerous <u>or</u> was in a defective condition when it left the defendant's control; and
> (3)   That the defect resulted in injury. There is no dispute but that Mr. Barhanovich was killed by the SMC [Suzuki] motor.

Bean's Mem. in Opp'n [361] at 11-12.

On November 16, 2015, the Court entered a Memorandum Opinion and

9

Order [445] striking the Initial and Supplemental Reports of Bean's expert Fritsch, and prohibiting him from offering expert testimony on behalf of Bean at trial. In response, on November 18, 2015, Bean filed a Motion for Reconsideration and/or Motion to Continue [448]. Suzuki filed a Response in Opposition [451] on November 23, 2015. On November 23, 2015, the Court entered a Memorandum Opinion and Order [453] denying Bean's Motion [448].

>       3.       Additional Motions Filed by the Parties

Bean has filed a Daubert Motion [344] to Exclude Testimony of Suzuki Motor Corporation's Expert Don F. Kueny, P.E., and Suzuki has filed Motions for Partial Summary Judgment as to Bean [404] and Archer Western [406]. Suzuki has also filed a Motion to Strike [412] and a Supplemental to Motion to Strike [42] portions of Bean's Memorandum in Opposition [410] to Suzuki's Motion for Partial Summary Judgment as to Bean [404]. Archer Western has filed a Joinder [432] in Bean's Memorandum in Opposition [429] to Suzuki's Motion to Strike [412]. These Motions are all fully briefed.

## II. DISCUSSION

### A.   Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Cox v. Wal-Mart Stores E., L.P.*, 755 F.3d 231, 233 (5th Cir. 2014); *see* Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, a court "view[s] the evidence

and draw[s] reasonable inferences in the light most favorable to the non-movant."

*Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011).  Before it can

determine that there is no genuine issue for trial, a court must be satisfied that "the

record taken as a whole could not lead a rational trier of fact to find for the non-

moving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986).  If the movant carries this burden, "the nonmovant must go beyond the

pleadings and designate specific facts showing that there is a genuine issue for

trial."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing

party must show, with "significant probative evidence," that there exists a genuine

issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir.

2000).  "A genuine dispute of material fact means that evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Royal v. CCC&R*

*Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted).  If the

evidence is merely colorable, or is not significantly probative, summary judgment is

appropriate.  *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671

F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249 (1986)).

Summary judgment is appropriate unless a non-moving party can produce

"significant evidence demonstrating the existence of a genuine fact issue."  *Johnson*

*v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010) (citing *Russell v.*

11

*Harrison*, 736 F.2d 283, 287 (5th Cir. 1984)).  In a non-jury case, "a district court has somewhat greater discretion to consider what weight it will accord the evidence."  *Id.* (citing *In re Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991)).  When a court decides a summary judgment motion prior to a bench trial, a court "has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result."  *In re Placid Oil Co.*, 932 F.2d at 398 (citing *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978)).  A court should draw its inferences without resort to the expense of a trial, unless those inferences involve issues of witness credibility or disputed material facts.  *Id.* (citations omitted).

B.    Bean Cannot Create a Triable Issue of Fact on Its Product Liability Indemnity Claim Against Suzuki Without Expert Testimony

The Court finds that Bean and Archer Western have failed to sustain their burden of proof on the products liability claim against Suzuki regardless of whether general maritime law,  the MPLA, or the Restatement (Second) of Torts §402A governs the issues in this case.  In the absence of admissible expert testimony, Bean and Archer Western cannot rebut Suzuki's Motion for Summary Judgment with sufficient evidence to prove, or otherwise create an issue of fact, that the Suzuki outboard motor involved in the incident at issue in this case was "unreasonably dangerous or was in a defective condition," or that it lacked adequate warnings, when it left Suzuki's control.

Bean attempted to prove that the outboard motor was defective in design or

12

for lack of adequate warnings through its designated mechanical engineering expert, Edward Fritsch.  For the reasons set forth in the Court's Memorandum Opinion and Order [445] granting Suzuki's Motions [331] and [379] to Strike Fritsch as an expert, Fritsch's Reports have been stricken and he will not be allowed to testify at trial, thus Fritsch's opinions cannot be used to support Bean and Archer Western's product liability claim against Suzuki.

Even if the Court had not stricken Fritsch's Initial Report dated October 19, 2014, the opinions expressed by Fritsch in that Report were insufficient to support Bean and Archer Western's claims that Suzuki was negligent in the "designing and/or manufacturing of the Suzuki Motor," that it failed to "adequately instruct and/or warn of hazards associated with the use" of the outboard motor, that the motor was "unreasonably dangerous to the user," and that the "materials were defective and/or insufficient to serve the purpose intended."  Mem. Opinion and Order [445] at 21 (citing Second Suppl. and Am. Third Party Compl. [163] at 8-9). As the Court stated in its Memorandum Opinion and Order [445] striking Fritsch, the Initial Report expressed no opinion at all about any defects in Suzuki's motor or inadequate warnings, therefore it would have been insufficient to create a material fact question on the third-party product liability claims against Suzuki.

Bean also designated Robert Bartlett, a mechanical engineer, to perform an "Evaluation of the Metallurgical Evidence in the Failure of an Outboard Motor . . . ." [329-1].  As set forth in Suzuki's Motion for Summary Judgment [ 329], Mr.

13

Barlett's Report [329-1] dated October 20, 2014, contains no discussion of any deficiency in the design, manufacture, or warnings with respect to the outboard motor.  Suzuki Mot. Summ. J. [329] at 9.  Bartlett's Report contains the following conclusions:

> The fracture through the clevis ears on the swivel bracket appeared to be due to a single application of load, and no evidence was observed which would suggest that a pre-existing crack or fatigue played a part in this fracture.
>
> The fracture through the body of the swivel bracket appeared to be due to a single application of load, and no evidence was observed which would suggest that a pre-existing crack or fatigue played a part in this fracture.
>
> The hexagonal hole in the transom plate appeared to be due to the head of the nearby bolt being pulled through that plate as a result of a single load cycle.

Bartlett Report [329-1] at 4.  Clearly, Barlett's Report does not support Bean's claim against Suzuki.

In its Memorandum in Opposition [361], Bean posits that it can establish its product liability claim through Fritsch's opinions and the testimony of Suzuki's Rule 30(b)(6) corporate designee, Mr. Nobuyuki Shomura.  Bean Mem. in Opp'n [361] at 16-22.  Based upon Mr. Shomura's testimony, Bean surmises that Suzuki knew the outboard motor was unreasonably dangerous based upon Suzuki's own testing, that Suzuki knew impacts of greater than 31 miles per hour might sever the motor at the swivel bracket causing the motor to launch into a boat, and that Suzuki failed to adequately warn of this fact.  Bean Mem. in Opp'n [361] at 16-17.

Bean further contends, based upon opinions rendered by Fritsch, that Suzuki knew the outboard motor was unreasonably dangerous and thus:

> had redesigned the swivel bracket so that it might be used in a 300 horsepower motor, its thickness was changed in anticipation of higher loads that might be placed on it and yet the swivel bracket remained interchangeable with the 225-horsepower motor.

*Id*. (citing Fritsch deposition at pages 200-201).

Bean reasons that such thickening of the swivel bracket in the original design was something that should have been done and therefore the design of the motor at issue was defective. *Id*. Bean concludes that Fritsch's opinion, that Suzuki knew that a safe alternative design was available prior to the manufacture of the outboard motor at issue on December 14, 2001, was confirmed by the deposition testimony of Mr. Shomura, as follows:

> QUESTION BY MR. MOULEDOUX: An engineering change notice shows that material was to be added to the swivel bracket casting, that is, the casting was to be made thicker at various locations. Is that correct?
>
> ANSWER: Yes that's correct. Changes were incorporated.
>
> QUESTION: Why was extra material added?
>
> ANSWER: The mass production of 200, 225 and 250 began around November of 2003. Subsequently, around September 2004, a new model, DF 300 was being developed. This DF 300 model was aimed at increasing the horsepower to 300 from 200, 225 and 250. And compared to 200, 225 and 250, the weight and the location of the center of gravity changed. In addition, because the horsepower would increase, what we call thrust, the force, the popular (sic) of the outboard motor generates also changed. May I continue?
>
> QUESTION: Yes.

> ANSWER:  And in order to be able to share the swivel bracket with 300 and 200, 225, and 250, certain changes were incorporated.

Bean Mem. in Opp'n [361] at 16-22 (citing deposition of Suzuki at pages 105-106).

This factual evidence gleaned from Suzuki, standing alone and without explanation from an expert, is insufficient to carry Bean and Archer Western's summary judgment burden.  The interpretation of test results, the analysis of Suzuki's testing methods, and the extrapolation of information gleaned from Suzuki requires testimony from an expert properly designated "who is qualified as an expert by knowledge, skill, experience, training, or education" pursuant to Rule 702 of the Federal Rules of Evidence.  Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Court finds that the nature of Bean's claim against Suzuki, including its theory of the importance of Mr. Shomura's testimony, implicates scientific, technical, or other specialized knowledge, and that no reasonable trier of fact could find for Bean and Archer Western on their products liability claim against Suzuki in the absence of such expert testimony.  Archer Western has not offered any other

16

competent summary judgment evidence that would create a material question of fact for trial. At this juncture, Bean and Archer Western cannot present admissible expert testimony that can be relied upon by a trier of fact to support their claims of product liability against Suzuki.

Having considered the parties' submissions, the record, and all relevant legal authorities, the Court is of the opinion that Suzuki is therefore entitled to judgment as a matter of law as to all claims advanced against it by Bean and Archer Western, and that Suzuki should be dismissed from this case with prejudice.

Having granted summary judgment in favor of Suzuki, the Court finds that Suzuki Motor Corporation's Motions for Partial Summary Judgment [404] [406], Suzuki Motor Corporation's Motion to Strike [412] and Supplemental Motion to Strike [420], and C.F. Bean, LLC, and Bean Meridian, LLC's, Motion to Exclude Testimony of Suzuki Motor Corporation's Expert Don F. Kueny, P.E. [344] are moot and should be denied as such.

## III. <u>CONCLUSION</u>

**IT IS**, **THEREFORE**, **ORDERED AND ADJUDGED** that Suzuki Motor Corporation's Motion for Summary Judgment [329] is **GRANTED.**

**IT IS**, **FURTHER**, **ORDERED AND ADJUDGED** that Suzuki Motor Corporation's Motions for Partial Summary Judgment [404] [406], Suzuki Motor Corporation's Motion to Strike [412] and Supplemental Motion to Strike [420], and C.F. Bean, LLC, and Bean Meridian, LLC's, Daubert Motion to Exclude Testimony

17

of Suzuki Motor Corporation's Expert Don F. Kueny, P.E. [344] are **DENIED** as **MOOT**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that C.F. Bean, LLC, Bean Meridian, LLC, and Archer Western Contractor, LLC's, Second Supplemental and Amended Third Party Complaint [163] against Suzuki Motor Corporation is **DISMISSED WITH PREJUDICE**, and Suzuki Motor Corporation is **DISMISSED WITH PREJUDICE** from this case.

**SO ORDERED AND ADJUDGED**, this the 23rd day of November, 2015.

_s/ Halil Suleyman Ozerden_
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE